# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1998 SESSION



**FILED**

**January 29, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | |
|---|---|
| **STATE OF TENNESSEE,** | ) |
| | ) C.C.A. No. 02C01-9702-CR-00081 |
| Appellee, | ) |
| | ) Shelby County |
| V. | ) |
| | ) Hon. James C. Beasley, Sr., Special Judge |
| | ) |
| **RICKY JACKSON,** | ) (Aggravated Rape; Aggravated Robbery) |
| | ) |
| Appellant. | ) |

FOR THE APPELLANT:

A C Wharton, Jr.
Shelby County Public Defender

Edward G. Thompson
Assistant Public Defender
616 Adams Avenue
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter

Sarah M. Branch
Counsel for the State
450 James Robertson Parkway
Nashville, TN 37243

William L. Gibbons
District Attorney General

Lee Coffee
Assistant District Attorney General
201 Poplar Avenue, Third Floor
Memphis, TN 38103

OPINION FILED: _____

**AFFIRMED**

**PAUL G. SUMMERS,**
Judge

## O P I N I O N

The appellant Ricky Jackson was convicted by a jury in the Shelby County Criminal Court of aggravated rape and aggravated robbery. The trial court denied the appellant's motion for a new trial. On appeal, the appellant raises the sole issue of whether the evidence is sufficient to support the jury's verdict. After reviewing the record, we find that the evidence is sufficient and affirm the appellant's convictions.

## STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e); State v. Duncan, 698 S.W.2d 63 (Tenn. 1985). The weight and credibility of a witness' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292 (Tenn. Crim. App. 1978). Jury verdicts accredit the state's witnesses and resolve all evidentiary conflicts in the state's favor. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); State v. Banes, 874 S.W.2d 73, 78 (Tenn. Crim. App. 1993). On appeal, the state is entitled to both the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832 (Tenn. 1978). Moreover, guilty verdicts remove the presumption of innocence, enjoyed by defendants at trial, and replace it with a presumption of guilt. State v. Grace, 493 S.W.2d 474 (Tenn. 1973). Appellants, therefore, carry the burden of overcoming a presumption of guilt when appealing jury convictions. Id.

## EVIDENCE

The victim, seventeen years old at the time of the offense, testified that on

December 1, 1995, she and her nephew went to a neighborhood store around 10:00 p.m. After the victim and her nephew left the store, she was paged by a friend; she walked to a nearby phone booth and returned the call. While the victim was on the phone, four people left a bar down the street and walked toward the victim. One of the four people, the appellant, walked over to the phone booth and told the victim to ask her friend on the phone if she wanted to buy a gun. Neither the victim nor her nephew knew the appellant. While the victim was on the phone, the appellant told the victim's nephew to be quiet. The area around the phone booth was well lit. The nephew identified the appellant's Nike tennis shoes as the shoes worn by the man at the phone booth.

After the victim finished her phone conversation, she crossed the street to walk home with her nephew. Both the victim and her nephew testified that the appellant walked with them and that he moved closer to the victim despite her efforts to move away from him. The appellant grabbed the victim and placed a gun to her side. The appellant told the victim that he would "blow her ass off" if she ran or screamed. To prevent injury to her nephew, the victim told him to go on home without her. As the victim's nephew walked home, he saw the appellant and the victim go behind a white house. Behind the house, the appellant took six rings, a beeper, and $35.00 from the victim.

Then, the appellant took the victim across the street and raped her behind an auto parts store. The victim testified that the appellant told her to undress and get on the ground. The appellant then forced the victim at gunpoint to have oral, vaginal, and anal sex with him. The appellant told the victim that he would kill her and her family if she told the police. After the rape, the victim ran to her sister's house and told her what happened. The victim's sister testified that the victim was "nervous, shaking and praying" when she returned from the store. The victim described her assailant to the police and went to the rape crisis center. She testified that she could clearly see the perpetrator's face during the rape as well as when she was at the phone booth. The examining nurse testified that the victim was bleeding slightly from the rectum and that tests of the anal

area revealed sperm. The amount of the sperm found was insufficient to conduct DNA analysis. The appellant was not apprehended.

On January 30, 1996, the victim saw the appellant. He was walking behind her and asked if she had seen a certain individual. When the victim turned, the appellant saw her face and ran. The victim ran to Ada Odum's house and told Ms. Odum that she had seen the man who robbed and raped her. Ms. Odum testified that the victim was visibly upset and shaken. Ms. Odum told the vicitm the appellant's name and where he lived. The victim called the police. When the police went to the appellant's house to arrest him, the appellant was on the phone calling the fugitive squad to see if or why he was wanted by the police. The appellant was taken into custody. The victim later identified the appellant in a photographic lineup.

The appellant testified at trial that he did not rob or rape the victim. His defense was that the case was one of mistaken identity. On appeal, the appellant cites testimony to support his claim that the evidence is insufficient to support the convictions. The appellant testified that he could not remember where he was on the night of the offense. In essence, he argues that the jury should have found him a credible witness because he admitted that he could not remember where he was on December 1, 1995, instead of fabricating an alibi. The appellant reasons that most people cannot remember where they were on a particular date. The appellant also argues that the jury should not have believed a police officer's testimony that most people call the fugitive squad to make themselves look innocent. The appellant contends that it is much more reasonable to believe that an innocent man, as opposed to a guilty man, would call to ask why he was a suspect. The appellant reasons that the police would be the last person that a guilty man would contact. Lastly, the appellant cites his own testimony in which he denied owning Nike tennis shoes on the date of the offenses, as identified by the victim's nephew.

**LAW AND CONCLUSION**

-4-

As applicable to this case, aggravated robbery is defined as the intentional or knowing theft of property from a victim accomplished with a deadly weapon. Tenn. Code Ann. § 39-13-402(a)(1) (1991). The appellant intentionally or knowingly deprived the victim at gunpoint of six rings, worth approximately $350.00; a beeper; and $35.00.

Aggravated rape can be defined as unlawful sexual penetration of a victim by the defendant or the defendant by a victim when force or coercion is used to accomplish the act and the defendant is armed with a weapon. Tenn. Code Ann. § 39-13-502(a)(1) (Supp. 1995). The victim testified that the appellant pointed a gun at her and told her to undress and perform fellatio on him. The appellant then vaginally and anally penetrated the victim at gunpoint with his penis.

The argument offered by the appellant is essentially that the jury should have believed his testimony and not that of the victim and her nephew. As previously stated, the jury resolves questions of credibility. The record contains ample evidence upon which to affirm the appellant's convictions. The area around the phone booth was well lit. Both the victim and the victim's nephew identified the appellant as the perpetrator. The victim testified that she could see the appellant's face while he raped her. The victim's identification of the perpetrator after the rape matched the appellant's description. The victim unequivocally identified the appellant in the photographic lineup as the person who robbed and raped her.

The judgment of the trial court is affirmed.

_____
PAUL G. SUMMERS, Judge

CONCUR:

_____
DAVID G. HAYES, Judge


_____
JOE G. RILEY, Judge